UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN STEPHEN EHRENREICH,<br><br>Plaintiff,<br><br>v.<br><br>ALEX PADILLA,<br><br>Defendant. | No. 2:20-cv-02422-JAM-CKD PS<br><br><u>ORDER and FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff proceeds pro se in this action and has requested authority to proceed in forma pauperis under 28 U.S.C. § 1915. (ECF No. 2.) This action was referred to this court by Local Rule 302(c)(21).

Plaintiff has submitted the affidavit required by section 1915(a) showing that plaintiff is unable to prepay fees and costs or give security for them. Accordingly, plaintiff's request to proceed in forma pauperis will be granted. 28 U.S.C. § 1915(a).

**I.    Screening under 28 U.S.C. § 1915**

The federal in forma pauperis statute authorizes federal courts to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

////

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

To avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## II. Allegations in the Complaint

Plaintiff, Ryan Ehrenreich, alleges that he ran for President of the United States as a write-in candidate in the November 3, 2020 general election. He contends that he campaigned using a large sign to direct interested voters to visit his campaign website and that he registered as a write-in candidate with the Federal Election Commission. (ECF No. 1 at 10.)

On October 7, 2020, plaintiff notified the Elections Division of the California Secretary of State that he would not be complying with California's requirements to qualify as a write-in candidate, because he believed them to be unconstitutional. Id. at 47. Instead, he proposed "that the State of California agree to count and report votes for his U.S. Presidential Write-In Ticket regardless of his Ticket not meeting [the] filing requirements." Id. at 11. On October 9, 2020, the Secretary of State responded that write-in votes would only be counted for write-in candidates

who completed and returned the legally required forms by October 20, 2020.  Id. at 50.  The letter cited the pertinent provisions of the California Elections Code and enclosed the referenced forms. Id.

On October 23, 2020—three days after the forms were due, and eleven days before the general election—plaintiff responded to defendant's letter by requesting special treatment under the law:

> What we are asking is that you find a way to count our votes under your existing statute by . . . (1) find[ing] other statutes that are either more important or take precedence in the order of application/enforcement, and (2) apply these statutes based on the unique circumstances of the year, so that you are able to temporarily suspend or provide us with an exemption to the parts of your election statutes that we will not meet . . . We respectfully request that you . . . find a way to provide our ticket with an exemption . . . such that votes for our candidacy will be counted in the upcoming 2020 U.S. Presidential Election.

Id. at 56-57.  Plaintiff also threatened costly litigation in the event the Secretary of State failed to comply.  Id.

Plaintiff alleges that he ultimately cast a write-in vote for himself via a mail-in ballot, but neither his vote, nor any other write-in votes for the Ehrenreich presidential ticket, have been counted or reported by the California Secretary of State.  Id. at 12.

After plaintiff realized that he had not won the presidential seat, he filed this action on December 12, 2020 against California's Secretary of State, Alex Padilla, alleging that the State of California unlawfully refused to count and report write-in votes for the Ryan Ehrenreich presidential ticket.  Plaintiff requests various forms of declaratory and injunctive relief, including (1) an injunction to prevent the State of California from certifying election results until after this case is decided; (2) a declaration that California Elections Code §§ 8600-8606 and 8650-8653 are unconstitutional and violate the First, Fifth, and Fourteenth Amendments; (3) a declaration that any laws restricting "the validity, counting, and/or reporting of individual write-in votes" are unconstitutional; (4) an order requiring all previously ignored write-in votes to be counted; (5) an order requiring a nationwide audit of all ballots cast in the 2020 presidential election to determine

which ones were affected by the unconstitutional write-in vote laws, and if at least fifty-percent were affected, then an order finding that the result of the 2020 presidential election "are invalid, null, and void and that a new election shall be held to determine the next president and vice president of the United States of America at the earliest possible date." Id. at 20-25.

### III.     Plaintiff's claims fail as a matter of law.

Plaintiff's general contention is that California's requirements to be certified as a presidential write-in candidate in a general election are unconstitutional. Specifically, he contends that California Elections Code §§ 8600-8606 and 8650-8653—which set forth the requirements for presidential write-in candidates—violate the First, Fifth, and Fourteenth Amendments.[1] Id. at 17-18.

The legal standard for constitutional challenges to state election laws is well developed. Although "voting is of the most fundamental significance under our constitutional structure," it "does not follow . . . that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." Burdick v. Takushi, 504 U.S. 428, 433 (1992). "The Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1." Tashjian v. Republican Party of Conn., 479 U.S. 208, 217 (1986). Consequently, the Supreme Court recognizes that States "retain the power to regulate their own elections." Burdick, 504 U.S. at 433 (citing Sugarman v. Dougall, 413 U.S. 634, 647 (1973); Tashjian, 479 U.S. at 217). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" Id. (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)).

"Election laws will invariably impose some burden upon individual voters." Id. "[T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly

---

[1] Although plaintiff does not assert a specific cause of action, the court construes his complaint liberally and presumes he seeks to enforce these alleged constitutional violations through 42 U.S.C. § 1983.

4

1 tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." Id. "Accordingly, the mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.'" Id. (quoting Bullock v. Carter, 405 U.S. 134, 143 (1972)). Rather, "a more flexible standard applies." Id. at 434 (citing Anderson v. Celebrezze, 460 U.S. 780, 788–89 (1983)). When considering a constitutional challenge to a state election law, courts must "weigh the character and magnitude" of the burden that the State's rule imposes on the rights at issue against the interests that the State contends justify that burden, "taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" Id.; Rubin v. City of Santa Monica, 308 F.3d 1008, 1014 (9th Cir.2002).

Under this standard, regulations imposing severe burdens on constitutional rights must be "narrowly drawn to advance a state interest of compelling importance." Burdick, 504 U.S. at 434. "Lesser burdens, however, trigger less exacting review[.]" Rubin, 308 F.3d at 1014. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the [constitutional] rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." Burdick, 504 U.S. at 434 (quoting Anderson, 460 U.S. at 788). "[N]o bright line separates permissible election-related regulation from unconstitutional infringements," and courts are required to make "hard judgments" given the interests involved. Rubin, 308 F.3d at 1014.

      **A.    The burden on plaintiff's rights is not severe.**

The court must first determine the nature of the burden on plaintiffs' rights, for "[i]t is the severity of th[ose] burden[s] . . . that determines the standard of review by which we judge the state's interest and, accordingly, decide whether the restriction is unconstitutional." Id. at 1014. "Courts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." Id. "This is true even when the regulations 'have the effect of channeling expressive activities at the polls.'" Id. (quoting Timmons v. Twin Cities Area New Party, 520 U.S. 351, 369 (1997)). Indeed, "[c]ourts will strike down state election laws as severe speech restrictions only when they

5

significantly impair access to the ballot, stifle core political speech, or dictate electoral outcomes." Id. at 1015.

Here, plaintiff has not shown that he faces a severe burden. This conclusion flows from both the allegations in the Complaint and recent rulings from courts in this circuit. First, the Complaint demonstrates a complete refusal by plaintiff to attempt to comply with the requirements to qualify a presidential write-in candidate under California's statutory scheme. Under California Elections Code §§ 8650-8653, only presidential write-in candidates "for which a group of 55 Presidential Electors pledge their votes to that write-in candidate, shall be counted as votes" in the November 3, 2020 presidential general election. (ECF No. 1 at 50.) Despite being aware of this requirement, plaintiff informed the California Secretary of State that he and his running mate "have not and will not fulfill the filing requirements for Presidential Write-in Tickets put forth by your office." Id. at 47. In plaintiff's Declaration of Write-in Candidacy, plaintiff wrote "REFUSE TO PROVIDE" in the Oath of Office section for the prospective presidential electors. Id. at 49. Thus, the Complaint affirmatively establishes that plaintiff intentionally refused to make efforts to secure his eligibility as a presidential write-in candidate under California law.

Courts in the Ninth Circuit have consistently declined to find a severe burden "absent any showing of electoral effort expended on the part of the plaintiff." Blankenship v. Newsom, No. 20-CV-04479-RS, 2020 WL 6589654, at *4 (N.D. Cal. Aug. 3, 2020) (refusing to find that California Election Code § 8400—which requires a presidential candidate seeking to appear on the ballot to obtain signatures of at least one-percent of total registered California voters— imposes a severe burden, because plaintiff had "done, quite literally, *nothing* to secure a place on the California ballot under § 8400") (emphasis original). Indeed, over the last few months, district courts have held plaintiffs' burdens non-severe where "[p]laintiffs essentially abandoned most of their efforts" upon the arrival of COVID-19, Common Sense Party v. Padilla, 2020 WL 3491041 at *6 (E.D. Cal. June 26, 2020), or where "[p]laintiffs have not shown that they exercised reasonable diligence to maximize their efforts to appear on the ballot in November 2020," Joseph Kishore v. Gavin Newsom, No. 2:20-cv-05859 at 10, 2020 WL 5983922 (C.D.

1    Cal. July 20, 2020); see also Nader v. Brewer, 531 F.3d 1028, 1035 (9th Cir. 2008) (The severity
2    of the burden "should be measured by whether, in light of the entire statutory scheme regulating
3    ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether
4    they will rarely succeed in doing so."). Under the precedent in this circuit, plaintiff has not
5    demonstrated a severe burden on his constitutional rights. Accordingly, strict scrutiny does not
6    attach to his claim.

### B. The balance of interests favors the state.

"The right to access the ballot is important to voters, candidates, and political parties alike, but it must be balanced against California's need to manage its democratic process." De La Fuente v. Padilla, 930 F.3d 1101, 1106 (9th Cir. 2019). Under the Supreme Court's ruling in Burdick, this balancing is fact-intensive: a court "must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick, 504 U.S. at 434. Where, as here, a less-than-severe burden renders strict scrutiny inapposite, "the state's important regulatory interests are generally sufficient to justify reasonable, non-discriminatory restrictions." Anderson, 460 U.S. at 789.

Courts have acknowledged several weighty and legitimate state regulatory interests. Blankenship, WL 6589654, at *5. First, California has an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." Munro v. Socialist Workers Party, 479 U.S. 189, 194 (1986). Exercising this right furthers the legitimate governmental goals of "preserv[ing] the integrity of the electoral process and regulating the number of candidates on the ballot to avoid undue voter confusion." Am. Party of Texas v. White, 415 U.S. 767, 782 n. 14 (1974). Second, California possesses a related interest in managing elections in a way that honors the choices of its citizenry without assuming "the expense and burden of runoff elections" or upending carefully fashioned electoral timelines. Nader v. Cronin, 620 F.3d 1214, 1218 (9th Cir. 2010). Finally—and blending into the public

1 interest—California is obliged to effectuate the legislatively-expressed will of its people. See,
2 e.g., Thompson v. Dewine, 959 F.3d 804, 812 (6th Cir. 2020).

3     Plaintiff does not clearly identify his alleged injury against which these state interests
4 must be weighed.  Although he alleges that the challenged provisions of the California Elections
5 Code violate the First, Fifth, and Fourteenth amendments, he does not clearly allege, for example,
6 that the provisions violate his constitutional right to association or political expression.  Nor does
7 he allege that the challenged statutory provisions discriminate against him in any manner.

8     But even presuming plaintiff were to allege injury to these important rights of association
9 and political speech, they do not, in this case, outweigh the state's regulatory interests.  The
10 restrictions at issue here are reasonable.  To qualify as a write-in candidate, plaintiff needed to
11 obtain the endorsement of 55 presidential electors.  This requirement is less onerous than the
12 requirement that was upheld in Blankenship, which required a candidate to obtain the signatures
13 of one percent of California's registered voters to appear on the ballot.  Nor are the restrictions
14 alleged to be discriminatory.  Under the applicable standard of scrutiny, "the state's important
15 regulatory interests are generally sufficient to justify reasonable, non-discriminatory restrictions."
16 Anderson, 460 U.S. at 789.  Thus, the court finds that plaintiff's claims are without legal merit
17 and should be dismissed with prejudice.  See Gardner v. Marino, 563 F.3d 981, 990 (9th Cir.
18 2009) (finding no abuse of discretion in denying leave to amend when amendment would be
19 futile).

20 **IV.    Conclusion**

21     Accordingly, IT IS ORDERED THAT:
22     Plaintiff's application to proceed in forma pauperis (ECF No. 2) be GRANTED;
23     Further, IT IS RECOMMENDED THAT:
24     1.    Plaintiff's complaint (ECF No. 1) be DISMISSED with prejudice; and
25     2.    The Clerk of Court be directed to close this case.
26     These findings and recommendations are submitted to the United States District Judge
27 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)
28 days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 24, 2021

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

17.2422.screen